JOHN WALSO AND ANOTHER v. OLIVER F. LATTERNER.[1]

July 12, 1918.

Nos. 20,918.

**Express trust — question of intention — new trial.**

In 1911, T. deposited in a savings bank a sum of money in his name "in trust for" his brother O. T. died in 1915 without withdrawing this deposit. It is *held*:

(1) Conceding that it was the intention of the depositor thus to create a trust in favor of the beneficiary, it was an express trust authorized by G. S. 1913, § 6710, subd. 5.

(2) If such was the intention of the depositor, on his death the money so on deposit belonged to the beneficiary.

(3) Whether the evidence as it stood at the close of the trial made a case for the jury on the issue of the intention of the depositor is not decided. But it is *held* that had there been in evidence certain declarations of the depositor as sworn to in affidavits on a motion for a new trial on the ground of newly discovered evidence, the issue would have been for the jury; there being sufficient excuse for not producing this evidence on the trial, the court should have granted the motion.

[1]Reported in 168 N. W. 353.

Action in the district court for Hennepin county by the administrators of the estate of Thomas J. Latterner, deceased, to recoved $5,984.06 and interest. The answer to the amended complaint alleged that, by depositing the $5,000 in bank, Thomas J. Latterner intended to and did give the same to defendant; that while a resident of Hennepin county, in 1915, Thomas J. Latterner became incompetent; that John A. Diethelm was duly appointed his guardian by the probate court of that county; that while acting in that capacity Diethelm filed in the probate court an inventory of all property found in possession of his ward, among them a pass-book showing a deposit of $5,000 in the Farmers and Mechanics Savings Bank in trust for this defendant; that he thereafter delivered the pass-book to defendant; that thereafter he filed his final account and petition for its allowance and his discharge as such guardian; that due notice by publication was given of the filing of the account and the pendency of the petition and, after hearing the objections filed, the probate court allowed the account as presented, and that more than 90 days had elapsed since the filing of the order allowing the account of the guardian, and no appeal therefrom had been taken. The case was tried before Jelley, J., who at the close of the testimony granted plaintiff's motion for a directed verdict for $5,899.06, with interest from January 11, 1916. Defendant's motion for a new trial was denied. From the order denying his motion for a new trial and from the judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

*Benton & Morley,* for appellant.

*John Walso* and *George S. Grimes,* for respondent.

BUNN, J.

Thomas J. Latterner, a resident of Hennepin county, died December 26, 1915, at the age of 86. He had never married. Defendant Oliver F. Latterner was his brother, and lived near him. For some years prior to April 8, 1911, Thomas J. Latterner had a savings account in his own name in the Farmers and Mechanics Savings Bank of Minneapolis. On the day mentioned he deposited $3,600 to this account, which made his total deposit $5,000. At the same time he opened another account in the bank in the name of "Thomas J. Latterner, in trust for Oliver F.

Latterner," and deposited $5,000 to this account. The pass-book was delivered to Thomas J. and he retained it in his possession until his death. From time to time he withdrew small sums aggregating about $85 from this account, but the credits for interest made the total of the account $5,899, at the time of the death of Thomas J. After his death the pass-book, which had been found among his papers by a guardian who had been serving during the last year of his life, was delivered to Oliver F. and the bank paid to him the amount shown due.

This action was brought by the administrators of the estate of Thomas J. to recover of defendant the amount so paid, with interest. At the close of the evidence the court directed a verdict for plaintiffs. Defendant moved for a new trial, one of the grounds being newly discovered evidence, the court saying as to the newly discovered evidence that neither defendant nor his counsel was guilty of negligence in not producing the evidence at the trial, but that, in the court's opinion, the evidence, if received, would not change the result. Defendant appealed from the order denying a new trial and also from the judgment subsequently entered.

Counsel for defendant contend that the case should have been submitted to the jury on the evidence outlined above, and in any event that the newly discovered evidence, if received on another trial, would make a question of fact for the jury. Counsel for plaintiffs contend that the evidence showed as a matter of law that the sum on deposit did not belong to defendant, but did belong to the estate of Thomas J. and that the newly discovered evidence was insufficient to create a question of fact.

There are many cases where one person has deposited in a savings bank money to the credit of another, or "in trust for" another. There is no question in this state, and little question in other jurisdictions at the present day, that such a deposit, where the bank-book is retained by the depositor, is not a completed gift or a completed trust. In either case, whether the deposit is made in the name of another, or whether in the name of the depositor in trust for another, the depositor may withdraw the deposit at any time before he dies. Branch v. Dawson, 36 Minn. 193, 30 N. W. 545. Where the depositor dies without withdrawing the deposit, the authorities are in conflict. In Massachusetts it is settled by a long line of decisions that the mere fact of such a de-

posit being made "in trust for" another, coupled with the retention of the pass-book by the depositor, is not sufficient evidence of a trust to entitle the beneficiary to the deposit on the death of the depositor. Brabrook v. Boston Five Cents Sav. Bank, 104 Mass. 228, 6 Am. Rep. 222; Clark v. Clark, 108 Mass. 522; Gerrish v. New Bedford Institution for Savings, 128 Mass. 159, 35 Am. Rep. 365; Cleveland v. Hampden Sav. Bank, 182 Mass. 110, 65 N. E. 27; Bailey v. New Bedford Inst. for Savings, 192 Mass. 564, 78 N. E. 648, 116 Am. St. 270; Supple v. Suffolk Sav. Bank, 198 Mass. 393, 84 N. E. 432, 126 Am. St. 451.

In New York the rule is the other way. The doctrine of the New York cases at the present time is best stated in Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L.R.A. 711, also reported with an elaborate note in 1 Ann. Cas. 900. We quote (p. 125):

"A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass-book or notice to the beneficiary. In case the depositor dies before the beneficiary, without revocation or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

It is unnecessary to cite the many New York decisions that preceded the Totten case, holding to an even more liberal rule in favor of the beneficiary. The above excerpt clearly states the law in New York. The New York rule or a rule even more favorable to the beneficiary, is in force in other states, as shown by the note referred to.

1. Counsel for plaintiffs contend first that the New York rule cannot be applied in this state for the reason that this trust, conceding that it was the intention of the depositor to create an express trust, is forbidden by our statute. It is true that the New York statute does not limit the creation of trusts in personal property, and that our statute abolishing all express trusts, except such as are authorized by the chapter, applies to trusts in personal property as well as in real property. But we think that such a trust as this is authorized by subdivision 5 of section 6710, G. S. 1913, assuming that the intention was there, and sufficiently evi-

denced. "To receive and take charge of any money * * · * and to invest and loan the same for the benefit of the beneficiaries of such express trust," is the broad language of subdivision 5. If Thomas J. Latterner intended to make himself trustee to receive and take charge of the money deposited, and to invest and loan the same for the benefit of Oliver F., we do not think that intention is defeated by the statute. As to the scope of subdivision 5, attention is called to the able and exhaustive opinion of the late Justice P. E. Brown in Young Men's Christian Assn. v. Horn, 120 Minn. 404, 139 N. W. 806.

2. The authorities are practically in accord on the proposition that the existence of the trust in every such case is a question of fact involving the intention of the donor and an apt declaration of that intention. See above note in 1 Ann. Cas. at page 904, and cases cited. The conflict between the New York decisions and those in Massachusetts is not at all over the validity of such a trust, but wholly as to what is sufficient evidence to make a question for the jury on the issue of the intention of the depositor. Even in Massachusetts, where the evidence shows declarations of his intention to create a trust, or to give the money to the beneficiary, the court refuses to disturb a finding that the trust is complete and enforceable on the death of the depositor. Gerrish v. New Bedford Inst. for Savings, 128 Mass. 159, 35 Am. Rep. 365; Supple v. Suffolk Sav. Bank, 198 Mass. 393, 84 N. E. 432, 126 Am. St. 451. It should be noted here that the declarations of the depositor in the cases cited, and in other cases we have examined, are no stronger as showing an intent to create a trust than are the declarations of Thomas J. in the case at bar, which constituted the newly discovered evidence which the trial court said would not change the result. It being a question of the intention of the depositor, all acts and declarations of his that shed any light on that question should be received in evidence, as well as all facts and circumstances surrounding the transaction.

One of these facts in the present case that it is proper to consider, and which is undoubtedly of some weight against the claim that the depositor intended to create a trust for his brother, is the fact that, on the very day that Thomas J. made this deposit, he had made a deposit to his own account in the bank which brought the amount up to $5,000, the

limit allowed by law. This was the situation in some of the cases referred to, and the basis of the decision in some of the Massachusetts cases. In other cases the action of the depositor in making a deposit to the account of or in trust for another might be ascribed to his wish to escape taxation. Except in the Massachusetts cases referred to, such a fact has been regarded simply as one for the jury to consider in deciding on the question of intent, and as not conclusive. Undoubtedly the strongest fact in favor of the beneficiary in such a case is the failure of the depositor to withdraw the deposit, allowing it to remain until his death. Another fact to be considered in this connection, is the following rule of the savings bank, printed in the pass-book:

"Whenever any deposit shall be made by any person in trust for another, * * * upon satisfactory evidence of the death of such trustee, the deposit or any part thereof, together with the dividends, or interest thereon, may be paid to the person for whom the said deposit was made."

It may well be inferred that Thomas J. was aware of this provision of the pass-book, and hence that he knew that in case of his death the bank would pay the money to Oliver.

It does not appear affirmatively that Oliver knew that the deposit had been made before the death of his brother, nor does it appear that he did not know of it. He was prevented from testifying to his knowledge, as it appeared that such knowledge was acquired from a conversation with his brother, since deceased. The burden of proof being on plaintiffs, it may fairly be assumed that defendant did know of the deposit shortly after it was made. This is only important on the question of acceptance of the gift by the donee. Such acceptance before the gift is revoked is necessary to its validity. But, the gift being wholly beneficial to the donee, with no burdens imposed, acceptance is presumed as a matter of law. Varley v. Sims, 100 Minn. 331, 111 N. W. 269, 8 L.R.A.(N.S.) 828, 117 Am. St. 694, 10 Ann. Cas. 473.

The feature of the retention of the pass-book by the donor would be important if the case were one of a deposit of money to the credit of the donee, but, as the depositor was trustee, the pass-book would naturally be retained by him, as pointed out in many of the cases cited. That the depositor withdrew small amounts from time to time is not a controlling

fact, in our opinion.   This fact was also present in some of the cases.

We decide that the trust was not forbidden by our statutes, and that whether defendant was entitled to the money on deposit on the death of Thomas J. Latterner is a question wholly of the intention of the latter when he made the deposit.   We have discussed the salient features of the evidence bearing on this question, but whether that evidence as it stood at the close of the trial required that this question be submitted to the jury or whether the court was right in directing a verdict, we are not required to decide, and do not decide.   We do decide that had the declarations of the depositor sworn to in the affidavits in support of the motion for a new trial been in evidence on the trial the case would have been one for the jury.   This is in harmony with all the authorities, as before pointed out.   The court having found in the affidavits sufficient excuse for the nonproduction of this evidence on the trial, and being clearly right in this, a new trial should have been granted on the ground of newly discovered evidence, even conceding that the court's decision on the evidence as it stood was correct, which we consider very doubtful.

Reversed and new trial granted.